# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **Joseph Jones, individually and on behalf of all others similarly situated,**<br><br>Plaintiff,<br><br>vs.<br><br>**Blackstone Medical Services, LLC,**<br><br>    Defendant. | **Case No.:**<br><br>**<u>CLASS ACTION</u>**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>  (1) **Telephone Consumer Protection Act, 47 U.S.C. § 227; and**<br>  (2) **Florida Telephone Solicitation Act, Fla. Stat. § 501.059**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.      Plaintiff, Joseph Jones ("Plaintiff"), brings this action against Defendant Blackstone Medical Services, to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 and the Florida Telephone Solicitation Act, Fla. Stat. § 501.059.

## <u>NATURE OF THE ACTION</u>

2.      This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., (the "TCPA").

3.     Defendant is a health care provider that sells sleep assistance devices. To promote its services, Defendant engages in unsolicited marketing, harming thousands of consumers in the process.

4.     Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of himself and members of the class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

5.     Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call or text in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

6.     Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is

deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within Florida's Middle District and, on information and belief, Defendant has sent the same text messages complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the Middle District of Florida.

## PARTIES

7.     Plaintiff is a natural person who, at all times relevant to this action, was a resident of Orange County, Florida.

8.     Defendant is a Florida corporation whose principal office is located at 550 N. Reo St. Suite 106, Tampa, Florida 33609.  Defendant directs, markets, and provides its business activities throughout the State of Florida.

## THE TCPA

9.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

10.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to

be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

11.     In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

12.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

13.     In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express ***written*** consent" for such calls to wireless numbers.  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

14.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

15.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

16.     "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

17.     "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. §

64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

18.     The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future. Id*.

19.     In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

20.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

21.     Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning

of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the ***text message***). (emphasis added).

22.     United States Court of Appeals for the Eleventh Circuit found that a single, unwanted telephone call or text is enough to satisfy Article III standing, pursuant to the TCPA. Drazen v. Pinto, 74 F.4th 1336, 1339 (11th Cir. 2023). The Court noted that "the harm associated with [one] unwanted text message shares a close relationship with the harm underlying the tort of intrusion upon seclusion." Id. at 1345. Because "[b]oth harms represent 'an intrusion into peace and quiet in a realm that is private and personal'…the harms are similar in kind, and the receipt of an unwanted text message causes a concrete injury." Id. (internal citation omitted).

23.     Recently, the FCC closed the "lead generator loophole by requiring that texters and callers get written consumer consent for robocalls or robotexts from one seller at a time, and thus prohibit abuse off consumer consent by comparison shopping and other websites." See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC-23-107, ¶ 14 (2023). The FCC "now make[s] it unequivocally clear that texters and callers must obtain a consumer's prior express consent to robocall or robotext the consumer soliciting their business…this requirement applies a single seller at a time[.]" Id. at ¶ 30.

### FLA. STAT. § 501.059

24. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves…the playing of a recorded message when a connection is completed to a number without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(A).

25. The statute defines "telephonic sales call" as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(I).

26. A person will be defined as a "called party" if they are a "person who is the regular user of the telephone number that receives a telephonic sales call," under Fla. Stat. § 501.059(1)(A).

27. An "unsolicited telephonic sales call" is one that is made other than in direct response to the express request of the person who is called under Fla. Stat. § 501.059(4)(K).

28. When a called party texts the word "Stop" the telephone solicitor, "shall cease sending text message solicitations to the called party" within 15 days. Fla. Stat § 501.059(10)(c).

## GENERAL ALLEGATIONS

29.     At all times relevant, Plaintiff was an individual residing within the State of Florida.

30.     At all times relevant, Defendant conducted business in the State of Florida.

31.     In or around September 2022, Defendant began to bombard Plaintiff with telemarketing text messages to Plaintiff's cellular telephone number ending in 8138 (the "8138 Number"):



32.     On May 10, 2023, after receiving numerous texts, Plaintiff respond "No" to Defendant's inquiries. Instead of ceasing all transmissions, Defendant asked

Plaintiff to provide a reason. When Plaintiff refused to respond, Defendant restarted their unending barrage of texts:



33.    Defendant's texts continued. On September 14, 2023, Plaintiff asked Defendant to cease all communications. Despite a system response indicating that the texts would cease, Plaintiff immediately sent another solicitation. Plaintiff again requested Defendant to "Stop" all communications:



34.     Nevertheless, Defendant continued to send text messages to Plaintiff. On September 16, 2023, Defendant, yet again, requested Defendant to "stop" texting him:



35.    Notwithstanding Defendant's *four* requests for these text message solicitations to stop, Plaintiff continued their texting campaign on Plaintiff's cellular device unimpeded:



36.    Since requesting for the text messages to stop, Plaintiff received at least 20 post-revocation text messages.

37.    Defendant's text messages were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

38.     Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., selling Plaintiff sleep tests.

39.     The information contained in the text message advertises Defendant's products to promote its business.

40.     Plaintiff received the subject texts within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

41.     At no point in time did Plaintiff provide Defendant with her express written consent to be contacted using an ATDS.

42.     Plaintiff is the subscriber and sole user of the 8138 Number and is financially responsible for phone service to the 8138 Number.

43.     The impersonal and generic nature of Defendant's text message demonstrates that Defendant utilized an ATDS in transmitting the messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short

code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130; *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).

44.    The text messages originated from the telephone numbers (813) 708-1554, (813) 502-4411 and (813) 738-6700, numbers which upon information and belief are owned and operated by Defendant.

45.    The numbers used by Defendant are known as a "long code," standard 10-digit phone numbers that enabled Defendant to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

46.    Long codes work as follows:  Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic.  These SMS gateway providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are responsible for relaying those messages to the intended mobile phone. This allows for the transmission of a large number of SMS messages to and from a long code.

47.     Specifically, upon information and belief, Defendant utilized a combination of hardware and software systems to send the text messages at issue in this case. The systems utilized by Defendant have the capacity to store telephone numbers using a random or sequential generator, and to dial such numbers without human intervention.

48.     Defendant's unsolicited text messages caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to his daily life.

49.     Defendant's unsolicited text messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that he regularly spent time checking his phone because of the numerous texts Defendant received. Additionally, Plaintiff took time to investigate Defendant and figure out how to stop the texts.

50.     Furthermore, Defendant's text messages took up memory on Plaintiff's cellular phone. The cumulative effect of unsolicited text messages like Defendant's poses a real risk of ultimately rendering the phone unusable for text messaging purposes as a result of the phone's memory being taken up. *See* https://www.consumer.ftc.gov/articles/0350-text-message-spam#text (finding that text message solicitations like the ones sent by Defendant present a "triple threat" of identity theft, unwanted cell phone charges, and slower cell phone performance).

51.     Defendant's text messages also can slow cell phone performance by taking up space on the recipient phone's memory. *See* https://www.consumer.ftc.gov/articles/0350-text-message-spam#text (finding that spam text messages can slow cell phone performance by taking up phone memory space).

## CLASS ALLEGATIONS

### PROPOSED CLASS

52.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

53.     Plaintiff brings this case on behalf of the Classes defined as follows:

**Internal TCPA DNC Class**

**All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number after making a request to Defendant to not receive future text messages.**

**FTSA Class**

**All persons who from four years prior to the filing of this action (1) were sent a text message by or on behalf of Defendant, (2) using an automatic telephone dialing system, (3) for the purpose of soliciting Defendant's goods and services, and (4) for whom Defendant (a) did not obtain prior express written consent, or (b) had their prior express written consent revoked.**

54.    Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

55.    Upon information and belief, Defendant has placed automated and/or prerecorded calls and texts to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

56.    The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

57.    There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(1) Whether Defendant made non-emergency calls/texts to Plaintiff's and Class members' cellular telephones using an ATDS;

(2) Whether Defendant can meet its burden of showing that it

obtained prior express written consent to make such calls/texts;

(3) Whether Defendant can show that they still maintained prior express written consent after Plaintiff texted "no" and/or "stop."

(4) Whether Defendant's conduct was knowing and willful;

(5) Whether Defendant is liable for damages, and the amount of such damages; and

(6) Whether Defendant should be enjoined from such conduct in the future.

58.    The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

## TYPICALITY

59.    Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

## PROTECTING THE INTERESTS OF THE CLASS MEMBERS

60.    Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

## PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

61.    A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

62.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.  Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
## Negligent and Knowing Violations of the TCPA, 47 U.S.C. § 227
## (On Behalf of Plaintiff and the Internal Do Not Call Class)

63.    Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 63 as if fully set forth herein.

64. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

65. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet certain minimum standards, including:

> "(3) Recording, Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the donot call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . .

> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A

do-not-call request must be honored for 5 years from the time the request is made."
47 C.F.R. §§ 64.1200(d)(3), (6)

66.     Under 47 C.F.R. § 64.1200(e), the rules set forth in 47 C.F.R. §§ 64.1200(c), (d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

67.     Plaintiff and Class members made requests to Defendant not to receive calls from Defendant.

68.     Defendant failed to honor Plaintiff and members' requests.

69.     Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on their behalf, pursuant to 47 C.F.R. § 64.1200(d).

70.     Because Plaintiff and members received more than one text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

71.     As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

72.     As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and Class members are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation.

73.     Plaintiff and Class members also suffered damages in the form of invasion of privacy.

74.     Plaintiff and Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

### COUNT II

### <u>Violations of the FTSA, Fla. Stat. § 501.059</u>
### (On Behalf of Plaintiff and the FTSA Class)

75.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

76.     Defendant—or third parties directed by Defendant—used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls and texts to the cellular telephones of Plaintiff and the other members of the Class in violation of Fla. Stat. § 501.059(8)(A).

77.     Under Fla. Stat. § 501.059(1)(G), prior consent includes the signature of the called party, the telephone of the called party, as well as clear authorization to the person making or allowing the telephonic sales call to make the call. Defendant did not have prior express consent to text the cell phones of Plaintiff and the other members of the putative Class when these sales calls were made.

78.     Furthermore, should consent have been deemed satisfied, Plaintiff, no less than four times, revoked any consent in place.

79.     Defendant has, therefore, violated Fla. Stat. § 501.059(8)(A) and Fla. Stat. § 501.059(1)(G) by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

80.     Defendant continued to send the text messages after receiving multiple requests to stop.

81.     Defendant knew that it did not have prior express consent to make these texts and knew or should have known that is was using equipment that constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

82.     As a result of Defendant's conduct and pursuant to Fla. Stat. § 501.059(10)(B), Plaintiff and other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

**WHEREFORE**, Plaintiff, Joseph Jones, on behalf of herself and the other members of the Class, pray for the following relief:

a.  A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b.  A declaration that Defendant's practices described herein violate the Florida Telephone Solicitation Act, Fla. Stat. § 501.059.

c.  An injunction prohibiting Defendant from using an automatic telephone dialing system to text message telephone numbers assigned to cellular telephones without the prior express permission of the called party;

c. An order naming Plaintiff and a class representative and Plaintiff's counsel as class counsel;

d.  An award of actual and statutory damages;

e.  An award of treble damages for willful violations; and

f.  Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

83.  Plaintiff and Class Members hereby demand a trial by jury.

Date: May 28, 2024

Respectfully submitted,

By /s/ Ryan McBride
Ryan McBride, Esq.
Florida State Bar No. 1010101
**Kazerouni Law Group, APC**
2221 Camino Del Rio S., #101
San Diego, CA 92108
Attorney for the Plaintiff

Mohammad Kazerouni
Florida State Bar No. 1034549
**Kazerouni Law Group, APC**
245 Fischer Ave., Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
mike@kazlg.com