UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSEPH JONES,

        **Plaintiff,**

v().                                          Case No: 6:24-cv-986-PGB-EJK

BLACKSTONE MEDICAL
SERVICES, LLC,

        **Defendant.**
_____/

## ORDER

This cause is before the Court on Defendant Blackstone Medical Services, LLC's ("**Defendant**" or "**Blackstone**") Motion for Stay or Transfer. (Doc. 26 (the "**Motion to Transfer**")). Plaintiff Joseph Jones ("**Plaintiff**") responded in opposition. (Doc. 32). Upon consideration, the Motion to Transfer is due to be granted.

### I.    BACKGROUND

The instant lawsuit involves allegations that Defendant, a health care provider selling sleep assistance devices, engaged in unsolicited telemarketing in violation of the Telephone Consumer Protection Act (the "**TCPA**"), 47 U.S.C. § 227 *et seq.*, and the Florida Telephone Solicitation Act (the "**FTSA**"), Florida Statute § 501.059. (*See generally* Doc. 1 (the "**Complaint**")).

Initially, on February 14, 2024, Seth Steidinger ("**Steidinger**") filed a lawsuit against Defendant in the United States District Court for the Central

District of Illinois (the "**Illinois Class Action**"). (Doc. 26-1; *see also* Case No. 1:24-cv-01074-JBM-JEH, Doc. 1). Shortly thereafter, Steidinger amended his first complaint, adding Natasha Koller ("**Koller**") as a Florida plaintiff. (Doc. 26-2; *see also* Case No. 1:24-cv-01074-JBM-JEH, Doc. 6). In their amended complaint, Steidinger and Koller asserted various claims premised on alleged violations of the TCPA and FTSA. (Doc. 26-2; *see also* Case No. 1:24-cv-01074-JBM-JEH, Doc. 6).

In the Illinois Class Action, plaintiffs Steidinger and Koller seek certification of the following three classes:

> **Internal Do Not Call List Class**: All persons within the United States who, within the time frame(s) relevant to this action, (1) received two or more text messages from Blackstone or anyone acting on Blackstone's behalf, (2) within any 12-month period, (3) for the purpose of selling Blackstone's products and/or services, (4) including at least one of those text messages being placed more than 30 days after such person requested that Blackstone stop calling and/or texting, and (5) which messages lacked an opt-out option period.
>
> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action (1) were sent text messages and/or telephone calls by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of encouraging the purchase or rental of Defendant's products and/or services; and (5) where either (a) Defendant did not obtain prior express written consent to message the person or (b) the called person previously advised Defendant to "STOP" messaging them.
>
> **FTSA Class:** All persons within the State of Florida who, (1) were sent a text message from Blackstone or anyone acting on Blackstone's behalf; (2) for the purpose of soliciting Defendant's goods and/or services, and (2) had previously

2

>   communicated to Blackstone that they did not wish to receive Defendant's text messages.

(Doc. 26-2; *see also* Case No. 1:24-cv-01074-JBM-JEH, Doc. 6).

A few months after the Illinois Class Action was filed, on May 28, 2024, Plaintiff instituted the instant putative class action, similarly alleging various violations of the TCPA and FTSA. (Doc. 1). In this case, Plaintiff purports to bring claims on behalf of two classes akin to those sought in the Illinois Class Action:

> **Internal TCPA DNC Class**
>
> All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number after making a request to Defendant to not receive future text messages.
>
> **FTSA Class**
>
> All persons who from four years prior to the filing of this action (1) were sent a text message by or on behalf of Defendant, (2) using an automatic telephone dialing system, (3) for the purpose of soliciting Defendant's goods and services, and (4) for whom Defendant (a) did not obtain prior express written consent, or (b) had their prior express written consent revoked.

(*Id.* ¶ 53).

Now, Defendant moves to transfer the instant lawsuit on the basis of the earlier-filed Illinois Class Action. (Doc. 26).[1] Plaintiff responded in opposition (Doc. 32), and the matter is ripe for review.

---

[1] Herein, the Illinois Class Action and the instant lawsuit will collectively be referred to as the subject Cases.

3

## II. LEGAL STANDARD

"The first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." *Collegiate Licensing Co. v. Am. Cas. Co.*, 713 F.3d 71, 78 (11th Cir. 2013). Under this rule of "federal comity," "there is a strong presumption across the federal circuits that favors the forum of the first-filed suit" to preserve judicial resources and avoid conflicting judgments. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005); *In re Checking Acct. Overdraft Litig.*, 859 F. Supp. 2d 1313, 1324 (S.D. Fla. 2012); *see Marietta Drapery & Window Coverings Co. v. N. River Ins. Co.*, 486 F. Supp. 2d 1366, 1369 (N.D. Ga. 2007) ("'The rule rests on principles of comity and sound judicial administration' and serves 'to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case pending in another court.'" (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603–04 (5th Cir. 1999))).

"Courts consider three factors in determining whether to apply the first-filed rule: (1) the chronology of the two actions; (2) the identity of the parties; and (3) the similarity of the issues." *Rodriguez v. Granite Servs. Int'l, Inc.*, No. 8:20-cv-2129, 2020 WL 6784116, at *2 (M.D. Fla. Nov. 18, 2020) (internal quotations omitted). "The parties and issues need not be identical; the proper inquiry is whether they substantially overlap." *Savage v. Seterus, Inc.*, No. 2:19-CV-14256,

2020 WL 230982, at *2 (S.D. Fla. Jan. 1, 2020) (internal quotations omitted). If the cases substantially overlap, then "the party objecting to jurisdiction in the first-filed forum carr[ies] the burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule." *Manuel*, 430 F.3d at 1135.[2] "Compelling circumstances [may] include bad faith negotiations, an anticipatory suit, and forum shopping." *MSP Recovery Claims Series 44, LLC v. Pfizer, Inc.*, No. 21-23676-CIV, 2022 WL 17484308, at *2 (S.D. Fla. Nov. 10, 2022) (quoting *Belacon Pallet Servs., LLC v. Amerifreight, Inc.*, No. 15-cv-191, 2016 WL 8999936, at *4 (N.D. Fla. Mar. 26, 2016)).

Notably, "[t]he first-filed rule not only determines which court may decide the merits of substantially similar cases, but also generally establishes which court may decide whether the second filed suit must be dismissed, stayed, or

---

[2] Courts seem to differ on whether it should be the first-filed court or the latter court assessing the existence of compelling circumstances that may justify departure from the first-filed rule. *Compare Kate Aspen, Inc. v. Fashioncraft-Excello, Inc.*, 370 F. Supp. 2d 1333, 1338 (N.D. Ga. 2005) ("[T]he first-filed rule generally requires the first court to decide whether the first-filed rule should apply, or whether a narrow exception to the rule that only applies in 'compelling circumstances,' favors transfer of the first-filed case to the second court for consolidation. . . . In short, the court does not believe it likely that an exception to the first-filed rule will ultimately apply . . . , although that question is ultimately for the [first-filed court] to decide." (internal citations omitted)), *and Salt Life, LLC v. Shaka Life, Inc.*, No. 18-cv-1151, 2018 WL 8332698, at *2 (M.D. Fla. Nov. 30, 2018) ("Having established . . . that the first-filed rule applies here, the burden is on [plaintiff] to establish that compelling circumstances warrant applying an exception to the first-filed rule. Whether [plaintiff] has met its burden is a determination to be made by . . . the first-filed court."), *with Vyas v. Taglich Bros., Inc.*, No. 22-CV-1515, 2023 WL 5938355, at *4 (M.D. Fla. Sept. 12, 2023) (noting that "all three factors needed to support application of the first-filed rule" have been established and thus, "the burden shifts to [p]laintiff to establish that 'compelling circumstances' exist to warrant an exception to the rule"). In any event, this Court finds that no compelling circumstances exist in the case at bar that would warrant an exception to the first-filed rule. *See* discussion *infra*.

5

transferred and consolidated." *Collegiate Licensing*, 713 F.3d at 78.[3] This means that the second-filed court only evaluates "the likelihood of substantial overlap between the two suits" and that "the ultimate determination of whether there actually [is] a substantial overlap requiring consolidation of the two suits" belongs to the first-filed court. *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971).[4]

## III. DISCUSSION

Essentially, Defendant contends that pursuant to the first-filed rule, a stay or transfer of the instant lawsuit is warranted pending the resolution of the Illinois Class Action. *See supra* Part II. Ultimately, the Court agrees that transfer is warranted under the first-filed rule.[5]

### A. First-Filed Rule

As indicated previously, this Court's analysis for purposes of transfer is confined to whether the two subject Cases "substantially overlap." *Savage*, 2020

---

[3] "Courts applying [the first-filed] rule generally agree that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed. Thus, once the court determines that a likelihood of substantial overlap exists between the two suits, it is no longer up to the second-filed court to resolve the question of whether both should be allowed to proceed. Rather, the proper course of action is for the court to transfer the case to the first-filed court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed." *Marietta Drapery & Window Coverings Co. v. N. River Ins. Co.*, 486 F. Supp. 2d 1366, 1370 (N.D. Ga. 2007) (internal quotation marks and citations omitted) (quoting *Cadle*, 174 F.3d at 606).

[4] The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

[5] The Court tailors its discussion to the first-filed rule. Considering transfer is warranted, the Court does not address the merits of a stay as such a decision shall remain with the first-filed court. *See supra* Part II.

WL 230982, at *2. In determining such, the Court considers three primary factors: "(1) the chronology of the two actions; (2) the identity of the parties; and (3) the similarity of the issues." *Rodriguez*, 2020 WL 6784116, at *2; *see, e.g.*, *Vyas*, 2023 WL 5938355, at *4. Here, Defendant argues that "(1) the Illinois case was filed first; (2) there is similarity of parties, i.e. Blackstone; and (3) there is similarity of issues, i.e. whether Blackstone's text messages regarding its sleep studies violated the TCPA and the FTSA and whether the plaintiffs can certify and maintain [such] classes." (Doc. 26, p. 6). In opposition to transfer, Plaintiff largely fails to address the above considerations relevant to the first-filed rule.[6] Instead, Plaintiff centers its argument on Florida's interest in adjudicating the dispute and the location in which the parties reside. (*See* Doc. 32).

The Court first addresses the chronology of the actions. It is indisputable that the Illinois Class Action, filed on February 14, 2024, was initiated before the instant lawsuit, filed on May 28, 2024. (*Compare* Doc. 1, *with* Doc. 26-1). Instead, Plaintiff attempts to argue that the subject cases "were filed so close in proximity as to make any repercussions based on the chronology of the actions negligible." (Doc. 32, p. 5). Ultimately, such a contention is unsupported and irrelevant to the analysis at hand. Simply put, the Illinois Class Action was filed a few months prior to the instant lawsuit. *See, e.g.*, *Salt Life*, 2018 WL 8332698, at *3 (comparing dates in which the two subject lawsuits were initiated in order to

---

[6] In fact, the Court notes that most of the cases Plaintiff relies on to support its position that the first-filed rule should not apply do not even implicate the first-filed rule. (*See* Doc. 32, pp. 4–5).

7

assess chronology of the actions); *Abreu v. Pfizer, Inc.*, No. 21-62122-CIV, 2022 WL 481184, at *6 (S.D. Fla. Feb. 16, 2022) (noting that even though the plaintiff "attempt[ed] to downplay [the] time-gap by referring to it as a 'few weeks,' the fact remains" that the first-filed case was filed "a full eight weeks" prior to the plaintiff's suit); *Navisiontech, Inc. v. Pet Specialties, LLC*, No. 8:18-CV-2643, 2019 WL 13020776, at *3 (M.D. Fla. July 8, 2019) (finding that the initial prong weighed in favor of transfer when the two actions where filed merely hours apart). Thus, the initial factor for consideration under the first-filed rule clearly weighs in favor of transfer.

Next, the Court weighs the similarity of the parties. In both the instant case and the Illinois Class Action, the sole Defendant is Blackstone. (*See* Docs. 1, 26-1); *see also MSP Recovery*, 2022 WL 17484308, at *3 ("In each case, Pfizer is the only defendant. . . . [and] the class definitions are sufficiently similar so as to satisfy the second prong of the first-filed rule."). Moreover, although the named plaintiffs are not the same, "[i]n a class action, the classes, and not the class representatives, are compared." *Zampa v. JUUL Labs, Inc.*, No. 18-25005-CIV, 2019 WL 1777730, at *4 (S.D. Fla. Apr. 23, 2019) (alterations in original) (quoting *Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008)); *see Abreu*, 2022 WL 481184, at *6; *Kelly v. Gerber Prods. Co.*, No. 21-60602-CIV, 2021 WL 2410158, at *2 (S.D. Fla. June 11, 2021) ("The fact that the named plaintiffs are not identical has no bearing[.]"). As delineated above, two of the purported classes in the Illinois Class Action—the Internal Do Not Call List Class

and the FTSA Class—closely resemble the two classes proposed here. *See supra* Part II. Therefore, the parties are sufficiently similar so as to satisfy the second prong of the first-filed rule.

Lastly, the Court finds that this action presents sufficiently similar issues to the Illinois Class Action. (*Compare* Doc. 1, *with* Doc. 26-1). In both of the subject Cases, plaintiffs allege that Defendant sent them unsolicited text messages and calls in order to promote the sale of its home sleep tests. (*See* Docs. 1, 26-1). Although the plaintiffs requested multiple times that Defendant stop contacting them, the messages continued. (*See* Docs. 1, 26-1). As a result, the subject Cases each set forth that Defendant's repeated telemarketing efforts violated the TCPA and FTSA. (*See* Docs. 1, 26-1). Accordingly, the third factor favors transfer as this case presents similar issues to the Illinois Class Action.

For the foregoing reasons, the Court finds that there is a clear likelihood of substantial overlap between the subject Cases.

### B.    Compelling Circumstances[7]

Considering Defendant has established that all three factors weigh in favor of applying the first-filed rule, the Court turns to assess whether compelling circumstances exist to justify departure from the rule's application. *See, e.g.*, *Manuel*, 430 F.3d at 1135. Simply put, Plaintiff offers no compelling reasons why the first-filed rule should not apply. (*See* Doc. 32).

---

[7]   *See* discussion *supra* note 2.

Although Plaintiff points generically to "natural destruction of evidence" and the importance of Plaintiff's right to choose the forum in which to litigate, such considerations do not move the needle—they are equitable and do not implicate the factors relevant to the application of the first-filed rule. *See CaterMeFit, Inc. v. Catered Fit Corp.*, No. 8:15-CV-326-T-17MAP, 2015 WL 12844285, at *2 (M.D. Fla. Apr. 16, 2015) ("[W]hat the [p]laintiff is really arguing here is . . . namely, [that] our venue is more convenient than [the first-filed court]. Perhaps, but that determination is the [first-filed court's] to make under the rule."). In any event, there is no suggestion of bad faith, an anticipatory suit, or forum shopping.

As stated previously, "[t]he first-filed rule not only determines which court may decide the merits of substantially similar cases, but also generally establishes which court may decide whether the second filed suit must be dismissed, stayed, or transferred and consolidated." *Collegiate Licensing*, 713 F.3d at 78. Considering the Court finds that this matter is subject to the first-filed rule, the Illinois court must determine how this matter shall proceed in terms of a dismissal, stay, transfer, or consolidation.

IV.  **CONCLUSION**

For the aforementioned reasons, Defendant's Motion to Transfer (Doc. 26) is **GRANTED**. The Clerk of Court is **DIRECTED** to transfer this action to the United States District Court for the Central District of Illinois, terminate any pending motions, and thereafter close the file.

**DONE AND ORDERED** in Orlando, Florida on November 11, 2024.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties